UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAMUEL T. DEMISSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 18-2270 (ABJ) |
| | ) |
| ALDON MANAGEMENT CORP., | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

Plaintiff, a District of Columbia resident appearing *pro se*, has sued a property management company ("Aldon") based in Bethesda, Maryland, under the court's diversity jurisdiction. Plaintiff complains about the unsatisfactory conditions of the apartment where he used to live and the behavior of his former neighbors. Defendant has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the grounds of *res judicata* and failure to state a claim upon which relief may be granted. The Court does not find the doctrine of *res judicata* to be applicable, but it agrees that plaintiff's claims fail on the merits. So it will grant defendant's motion for the reasons explained more fully below.

## BACKGROUND

**A. Factual Allegations**

Plaintiff was defendant's tenant in two different apartment buildings from 2013 to 2019. *See* Compl. ¶ 8. This action is based on plaintiff's tenancy at 1401 Whittier Place N.W., where he moved on March 1, 2016, and where he resided on October 1, 2018, when this civil action began.

Although plaintiff alleges states that defendant "disrupt[ed]" his "happiness and enjoyment in life" only within "the past several months" before the complaint, Compl. ¶ 2, he also alleges that he "experienced problems in many different ways" since 2016, and that he repeatedly lodged complaints with the leasing office.

### 1. Noises

Plaintiff "complained about . . . repeated noises and disturbances" coming from two neighboring apartments. Compl. ¶ 13. The noises included running and bouncing things on the floor; dragging furniture; constantly flushing toilet water; constantly hitting the wall; talking loudly and making other noises in the hallway "with kids"; and constantly slamming doors. *Id*. ¶ 15.

### 2. Amenities

Plaintiff complained about defendant's alleged failure "to repair . . . problems with walls, hard to lock windows, [the] refrigerator, . . . inconsistent air conditioner, . . . rodents, roaches," and leaking pipes, *id*. ¶ 9, although the refrigerator, air conditioner, and stove were "controlled by a remote" that plaintiff admittedly "did not know how [it] exactly work[ed]." *Id*. ¶ 12.

### 3. Invasions of privacy

Plaintiff alleges that at unspecified times, his apartment "was searched repeatedly without notification"; his property was "misplaced"; he "lost medical documents"; and his mail was misplaced into "other residents' mailbox[es]," causing him to miss medical appointments[.]" *Id*. ¶ 16. Plaintiff attaches to the complaint three separate letters from the property manager dated September 14, 2018, September 25, 2018, and September 26, 2018, notifying him that a contractor would be entering his apartment "accompanied by an Aldon Management team member," to repair

the plumbing, and then "to complete drywall, plaster and paint repairs to your kitchen." Compl. Ex. B at 11-13 [Dkt. # 1-1]. Each notice advised plaintiff to "ensure" that the affected areas were "free and clear of any items, obstructions and personal belongings." *Id*.

### 4. Harassment

Finally, plaintiff alleges that defendant "harassed and intimidated" him "with a [series] of warnings, court papers and eviction letters in [his] time of pain and sickness." Compl. ¶ 18. This allegation is based on proceedings that defendant initiated in the Landlord and Tenant Branch of the Superior Court of the District of Columbia ("L&T" case), which concluded during the course of this litigation.

### B. Eviction Proceedings

Aldon filed an L&T case for non-payment of rent on January 22, 2018. *See* Compl. Attachment, Verified Complaint for Possession of Real Property (Nonpayment of Rent – Residential Property) [Dkt. # 1-1 at 4]. Demisse was served a summons and a copy of the complaint on February 19, 2018. *Id*. at 5, Affidavit of Service. When he failed to show for an initial hearing scheduled on February 27, 2018, a default was entered. *See* Ex. 1 to Affidavit of Jack D. Lapidus in Support of Def.'s Mot. to Dismiss, case docket for *Aldon Management Corp. v. Demisse*, No. 2018 LTB 001888 (D.C. Super. Ct.) [Dkt. # 15-2 at 3-7]. The docket further shows that a "Notice to Tenant of Payment Required to Avoid Eviction" was issued on February 28, 2018, followed by an entry of "Judgment for Plaintiff [Aldon] for Possession" on March 14, 2018, and approval of a Writ of Restitution on April 4, 2018.[1]

---

[1] "In a case in which a judgment for possession has been entered in favor of the plaintiff based on the defendant's nonpayment of rent, a writ of restitution may issue if: (A) the court has set a redemption amount on the record in the presence of the parties; or (B) the plaintiff has filed a

3

On August 14, 2018, Aldon filed a notice of intent to appear in court on August 27, 2018, to request that the writ of restitution be issued so that the eviction could proceed. *See* Compl. Attachments at 7. But on the day Aldon was to appear in court, Demisse filed with the assistance of counsel a "Motion to Vacate Default Judgment," which was scheduled to be heard on September 7, 2018. When the parties appeared on that day, the court issued a briefing schedule and continued the motion hearing to October 12, 2018. But only the attorney for Aldon appeared for the rescheduled hearing, prompting the court to deny Demisse's motion to vacate "for Want of Prosecution." Oct. 12, 2018 docket entry. On November 30, 2018, Aldon refiled its notice of intent to seek a writ of restitution; the writ was approved on December 3, 2018, without a hearing; and the writ was executed on January 23, 2019, resulting in plaintiff's eviction from the apartment. *See* Nov. 30, 2018 – Jan. 23, 2019 docket entries.

**C. Claims**

The instant complaint consists of five counts.

- The First Cause of Action, captioned "Negligence, infliction of emotional distress," is based on defendant's failure "to respond on time" to plaintiff's noise complaints.

- The Second Cause of Action, captioned "Negligence, mental anguish, intentional inflictions of emotional distress," is based on the alleged non-consensual searches of plaintiff's apartment "by defendant's employees."

- The Third Cause of Action, captioned "Negligence, Nuisance, lack of quiet enjoyment," is based on defendant's failure "to stop the noises" and disturbances coming from the neighboring apartments.

---

notice to tenant of payment required to avoid eviction in accordance with Rule 14-II." Super. Ct. L&T Rule 16(a).

- The Fourth Cause of Action, captioned "Negligence, threat and harassment," is based on the series of "court paper[s] and eviction letters" issued in the L&T proceedings defendant initiated.
- The Fifth Cause of Action, captioned "Negligence, breach of the warranty of habitability," is based on defendant's failure to repair plaintiff's apartment.

Plaintiff demands $500,000 in "compensatory and statutory damages" and punitive damages. Compl. at 10-15.

## LEGAL STANDARD

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*., quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*., citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in the plaintiff's favor, and the Court should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d

1271, 1276 (D.C. Cir. 1994). Where the action is brought by a *pro se* plaintiff, a district court has an obligation to consider "all of [his] filings together" before dismissing the complaint, *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See Kowal*, 16 F.3d at 1276; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997).

## ANALYSIS

### A. Res Judicata

The *res judicata* doctrine is designed generally to conserve judicial resources and the finality of judgments; the appeal process is available to correct error. *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981). Consequently, "the parties to a suit and their privies are bound by a final judgment and may not relitigate any ground for relief which they already have had an opportunity to litigate even if they chose not to exploit that opportunity whether the initial judgment was erroneous or not." *Id.* "Whether two cases implicate the same cause of action

turns on whether they share the same 'nucleus of facts.'" *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217 (D.C. Cir. 2004), quoting *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002).

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a state court judgment is entitled to "the same respect that it would receive in the courts of the rendering State." *Herrion v. Children's Hosp. Nat. Med. Ctr.*, 448 Fed. App'x 71, 72 (D.C. Cir. 2011), quoting *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996). Since "that rule extends to judgments of the District of Columbia courts," this Court must "apply D.C. law in determining the preclusive effect of the Superior Court judgment." *Id*. The Court of Appeals has observed that "the D.C. law of claim preclusion does not differ significantly from the federal." *Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 78 n.4 (D.C. Cir. 1997).

Under D.C. law, a subsequent action is barred by *res judicata* if "(1) the claim was adjudicated finally in the first action; (2) . . . the present claim is the same as the claim which was raised or which might have been raised in the prior proceeding; and (3) . . . the party against whom the plea is asserted was a party or in privity with a party in the prior case." *Calomiris v. Calomiris*, 3 A.3d 1186, 1190 (D.C. 2010).

Defendant argues that plaintiff's claim is procedurally barred by the L&T case. *See* Def.'s Mem. at 2, ECF No. 15-1 (citing *Aldon Management Corp. v. Demisse*, No. 2018 LTB 001888). The Court disagrees. In the L&T case, defendant sued for non-payment of rent and sought "to regain possession of the Property," and it obtained a default judgment.[2] Def.'s Mem. at 2. Plaintiff, through counsel, moved to vacate the default judgment, but his motion "was ultimately denied for want of prosecution." *Id*. Ultimately, plaintiff was evicted without a hearing

---

[2] Defendant mischaracterizes the entry of "default" on February 27, 2018, as a "default judgment." The actual judgment for possession was entered on March 14, 2018.

following Aldon's satisfaction of the notice requirements. *See supra* note 1; L&T case, Nov. 30, 2018 docket entries. But even if a default judgment may have preclusive effect under D.C. law, *see Quick v. EduCap, Inc.*, 318 F. Supp. 3d 121, 139 (D.D.C. 2018), claim preclusion does not apply where, as here, the remedy sought in the subsequent case was unavailable in the prior case. *Hurd v. District of Columbia, Gov't*, 864 F.3d 671, 679 (D.C. Cir. 2017). In *Hurd*, the Court explained that *res judicata* "precludes later theories or pleas for relief arising out of the same claim only if they could have been asserted in the earlier case." *Id.* In other words, "[t]he doctrine does not bar a litigant from doing in the present what he had no opportunity to do in the past." *Drake v. F.A.A.*, 291 F.3d 59, 67 (D.C. Cir. 2002).

Plaintiff did not have an option to bring his current claim for money damages in the L&T case. Nothing in the District's law governing actions for "ejectment for non-payment of rent," D.C. Code § 16-1124, authorizes a countersuit for damages based on a tort. *See Weisman v. Middleton*, 390 A.2d 996, 1001 (D.C. 1978) (noting that "Super. Ct. L&T R. 5(b), on which the landlords rely, prohibits the filing, in a suit for possession in the Landlord and Tenant Branch, of a counterclaim for other than 'a money judgment based on the payment of rent or on expenditures claimed as credits against rent or for equitable relief related to the premises.'") (citation omitted)). Therefore, the Court finds *res judicata* to be inapplicable.

### B. Failure to State a Claim

That does not mean, however, that plaintiff's claims are viable. The complaint is largely a tort action, but the Court notes at the outset that plaintiff also invokes the Fourth and Fifth Amendments to the Constitution in counts one and two. *See* Compl. ¶¶ 21-22, 24-25. Since the Constitution regulates governmental action, not acts of private parties, those portions of the

complaint that are based on the Constitution must be dismissed. *See NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 42 (D.C. Cir. 2015), quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349 (1974) ("The Constitution offers no shield against purely private conduct, 'however discriminatory or wrongful.'"); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991) ("[T]he conduct of private parties lies beyond the Constitution's scope in most instances[.]").

Plaintiff's tort claims are deficient as well.

### 1. Negligent Infliction of Emotional Distress

Generally, "[i]n the District of Columbia, as elsewhere, '[t]o establish negligence, a plaintiff must prove a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach.'" *Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006), quoting *District of Columbia v. Beretta, U.S.A., Corp.*, 847 A.2d 1127, 1134 n.2 (D.C. 2004).

Historically, courts evaluating negligent infliction of emotional distress claims "followed the 'physical impact' rule, which permits recovery for negligently inflicted emotional distress if the distress results from a physical impact and is accompanied by a physical injury." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 796 (D.C. 2011). But the D.C. Court of Appeals has "abandoned the 'physical impact' requirement in favor of the more liberal 'zone of physical danger' rule, which permits recovery for mental distress if the defendant's actions caused the plaintiff to be 'in danger of physical injury' and if, as a result, the plaintiff 'feared for his own safety.'" *Id.*, quoting *Williams v. Baker*, 572 A.2d 1062, 1066 (D.C. 1990) (en banc).

Under this theory of liability, "[a] plaintiff who was not physically injured can recover on a claim for negligent infliction of emotional distress only if he or she 'was in the zone of physical

9

danger and was caused by defendant's negligence to fear for his or her own safety.'" *Destefano v. Children's Nat'l Med. Ctr.*, 121 A.3d 59, 72 (D.C. 2015). "[T]he zone of danger rule . . . requires that the plaintiff's presence in the zone of danger be contemporaneous with [his] fear for [his] own safety," *Jones v. Howard Univ., Inc.*, 589 A.2d 419, 423 (D.C. 1991), and "the plaintiff must show that [ ]he was physically endangered by the defendant's negligent activity." *Johnson v. District of Columbia*, 728 A.2d 70, 77 (D.C. 1999); *see Arias v. DynCorp*, 752 F.3d 1011, 1017-18 (D.C. Cir. 2014) ("To recover under this tort theory, plaintiffs must prove that they were within the 'zone of physical danger' created by the defendant's negligent action . . . . The question is not the reasonableness of the plaintiff's distress, but rather the unreasonableness of the defendant's conduct."). A "defendant does not breach a duty to plaintiffs unless he *actually* exposes them to danger." *Arias*, 752 F.3d at 1018, citing *Williams v. Baker*, 572 A.2d 1062, 1064 (D.C. 1990) (emphasis in original).

Apart from the zone of physical injury rule, a plaintiff may state a claim for negligent infliction of emotional distress if he shows that the defendant had a particular responsibility to keep him safe. He must establish that

> (1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff.

*Hedgepeth*, 22 A.3d at 810-11 ("special relationship test").

In his first cause of action, plaintiff faults defendant for not responding on a timely basis to his complaints about (1) the neighbors' noise and disturbances, (2) the alleged non-consensual

"searches" of his apartment by defendant's employees, and (3) the misplaced mail. Compl. ¶¶ 16-17, 20. None of those allegations satisfies either the zone of physical danger rule or the special relationship test. Also, plaintiff admits that for the two years he lived in the apartment building, he "did not know" the neighbors, had "never talked to them," and generally knew nothing about them or "paid [them any] attention," Compl. ¶ 13, which further undermines this claim.

Notably, plaintiff alleges that he was "harassed and intimidated" only by the actions defendant undertook to secure his eviction in the L&T case. Compl. ¶ 18; *see id*. (acknowledging receipt of defendant's summons to appear in court and other legal notices). But while a lawsuit may well be the source of anxiety, that form of stress cannot supply the basis for a civil action for emotional distress. From all indications, defendant proceeded lawfully under D.C. Code § 16-1124, and the D.C. Court of Appeals has made clear that "reliance on the orderly processes of law to resolve a leasehold dispute need not, and should not, in itself provide the basis for a discrete cause of action[.]" *Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992); *see Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980) (noting that injuries that "might normally be incident to the service of process on anyone involved in a legal suit" are not actionable) (internal quotation marks and citations omitted)).

### 2. Intentional Infliction of Emotional Distress ("IIED")

In the District of Columbia, "[t]he tort of intentional infliction of emotional distress consists of (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Kotsch v. District of Columbia*, 924 A.2d 1040, 1045 (D.C. 2007). "As to the first element, '[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id*. at 1045-46, quoting Restatement (Second) of Torts § 46, cmt. d. "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." *Newmyer v. Sidwell Friends Sch*., 128 A.3d 1023, 1037 (D.C. 2015).

In his second of cause of action, plaintiff claims that his apartment "was searched by defendant's employees repeatedly without [his] consent and notifying [him] on time[.]" Compl. ¶ 24. Plaintiff does not specify when such took place, but his allegations and exhibits paint a different picture. Plaintiff has included with the complaint photos of unidentified spaces in the apartment date-stamped between August 18, 2018, and August 25, 2018 [Dkt. # 5]. Plaintiff has also supplied the property manager's two notices that informed him about the need to enter his apartment on September 17, 2018, to repair the plumbing, and about the need to return on September 26, 2018, and September 27, 2018, "to complete drywall, plaster and paint repairs to your kitchen." [Dkt. 1-1 at 11-13]. Each notice informed plaintiff that a contractor would be entering his apartment between 9 a.m. and 4 p.m. with "an Aldon Management team member" to make the repairs and that he should "ensure" that the area where the work would be done was "free and clear of any items, obstructions and personal belongings." *Id*. at 12, 13. This type of entry is consistent with a leased apartment, and plaintiff has not come close to alleging the sort of conduct needed to support an IIED claim.

### 3. Breach of the Covenant of Quiet Enjoyment

In his third cause of action, plaintiff points to defendant's alleged failure to "stop the noises" of his neighbors, which he claims resulted in disruption of his "quiet and peaceful

12

enjoyment of the rental unit." Compl. ¶ 28. While the law does recognize a concept called "quiet enjoyment," it does not actually refer to noisy neighbors. "The landlord's covenant for quiet enjoyment . . . goes only to . . . possession . . . . The covenant is not broken unless there is an eviction from, or some actual disturbance in, the possession by the landlord," or by a third person under paramount title. *Weisman v. Middleton*, 390 A.2d 996, 1001 (D.C. 1978), quoting *Hyde v. Brandler*, 118 A.2d 398, 399-400 (D.C. 1955) (ellipses in original). Since at the times that are covered by these claims, plaintiff "remained in possession of the apartment," his "quiet enjoyment of the property . . . was not disturbed," in the legal sense.[3] *Id.*; *see Sobelsohn v. Am. Rental Mgmt. Co.*, 926 A.2d 713, 716 (D.C. 2007) ("[T]the so-called covenant of quiet enjoyment [is] basically a property concept, focusing on the grant of the possessory interest. Absent departure from the premises, a tenant has great difficulty in claiming a 'constructive eviction' equivalent to the actual physical interference with his possessory rights.").

### 4. Negligence, threat and harassment

In his fourth cause of action, plaintiff suggests that the L&T action was also an act of retaliation, as well as harassment. *See* Compl. ¶¶ 31-34. But under the District's "elaborate remedial scheme . . . governing landlord and tenant relations . . . there is no common law [nor statutory] authority for [an independent] cause of action for retaliation against a landlord." *Twyman v. Johnson*, 655 A.2d 850, 858 (D.C. 1995); *see accord Segreti v. Deiuliis*, 193 A.3d 753,

---

[3] The D.C. Court of Appeals has suggested that even if the warranty of habitability "is limited to issues involving the physical condition of the premises," implicit within a rental lease is the "obligation" of a landlord to "not act in other ways that interfere unreasonably with permissible uses of the leased premises," which could include making "excessive noise in common areas." Such noise, however, must be attributable to "the landlord, or someone whose conduct is attributable to him," not the neighbors about whom plaintiff has complained. *Sobelsohn,* 926 A.2d at 716, quoting Restatement (Second) of Property: Landlord and Tenant § 6.1 (1977).

758 (D.C. 2018) (recognizing "holding [of *Twyman*] that [D.C.'s Rental Housing Act] does not create private damages action for retaliatory eviction"). Rather, the retaliatory motive of a landlord may be asserted as a defense in the eviction proceedings in the L&T court. *See Twyman*, 655 A.2d at 855-56 (holding that the Rental Housing Act's "broad prohibition" against retaliation does not "create[ ] a cause of action for civil damages not heretofore recognized in this jurisdiction").

### 5. Breach of the Warranty of Habitability

In the District of Columbia, "leases for residential housing . . . include an implied warranty of habitability." *George Washington Univ. v. Weintraub*, 458 A.2d 43, 46 (D.C. 1983). Accordingly, "landlords clearly bear the burden of maintaining rented premises in compliance with housing code provisions," but they are not liable "for losses arising from *all* conditions that violate the code." *Id*. at 47 (emphasis in original). Rather, "a landlord must exercise reasonable care to maintain rental premises in compliance with the housing code in order to fulfill the implied warranty of habitability." *Id*. at 49, following *Javins v. First Nat. Realty Corp*., 428 F.2d 1071, 1072-73 (D.C. Cir. 1970) (holding "that a warranty of habitability, measured by the standards set out in the Housing Regulations for the District of Columbia, is implied by operation of law into leases of urban dwelling units covered by those Regulations and that breach of this warranty gives rise to the usual remedies for breach of contract"). "The Housing Regulations do not impose immediate and unconditional liability upon a landlord for code violations but, instead, contemplate sanctions only if repairs are not effected after actual or constructive notice of the defect reaches the landlord[.]" *George Washington Univ.*, 458 A.2d at 47-48. Even then, "more than *de minimis* violations of the Housing Regulations are required to establish breach of the implied warranty of

habitability." *Id.* 458 A.2d at 47 n.5, quoting *Javins*, 428 F.2d at 1082 n.63 ("one or two minor violations standing alone . . . do not affect habitability").

In his fifth cause of action, plaintiff alleges that defendant breached the warranty of habitability when it "failed to repair the problems in the apartment, including unauthorized control of appliances[,] such as [the] increasing and decreasing of the [air conditioner's] temperature; [the] turning on and off of the refrigerator repeatedly; [the] turning on and off of the apartment fan;" and "a clicking sound" coming "out of the stove." Compl. ¶ 35. Plaintiff concludes that defendant's failure "to respond on time to repair the premises and their various acts . . . put [his] health and safety at risk." *Id.* ¶ 36. But plaintiff does not allege any housing code violations; nor does he allege that the appliances themselves did not operate or needed repair. He acknowledges on the face of his complaint that the issue was his not "know[ing] exactly" how to operate their remote controls. *Id.* ¶ 12. Plaintiff's allegations simply fail to "nudge" this claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## CONCLUSION

For the foregoing reasons, the Court grants defendant's motion to dismiss. A separate Order accompanies this Memorandum Opinion.

/s/ Amy B. Jackson

AMY BERMAN JACKSON
DATE: March 16, 2020      United States District Judge